IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LAURA TAYLOR | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-04-CV-1554-BD |
| | § | |
| BIGELOW MANAGEMENT, | § | |
| INC., ET AL. | § | |
| | § | |
| Defendant. | § | |

**COURT'S CHARGE TO THE JURY**

MEMBERS OF THE JURY:

Now that you have heard the evidence, it is my duty to instruct you as to the law applicable to this case.

**A.**

**General Instructions**

It is your duty as jurors to follow the law as stated in this Charge and to apply the rules of law so given to the facts as you find them from the evidence. You are not to single out one instruction alone as stating the law, but must consider the instructions as a whole. Neither are you to be concerned with the wisdom of any rule of law stated by me.

Regardless of any opinion you may have as to what the law is or ought to be, it would be a violation of your sworn duty to base a verdict upon any view of the law other than that given in the instructions of the Court, just as it would be a violation of your sworn duty, as judges of the facts, to base a verdict upon anything other than the evidence in the case.

In deciding the facts of this case, you must not be swayed by bias or prejudice or favor as to any party. Our system of law does not permit jurors to be governed by prejudice or sympathy or public opinion. Both the parties and the public expect that you will carefully and impartially consider all of the evidence in the case, follow the law as stated by the Court in these instructions, and reach a just verdict regardless of the consequences.

This case should be considered and decided by you as an action between persons of equal standing in the community and holding the same or similar stations in life. Corporations are entitled to the same fair trial at your hands as is a private individual. The law is no respecter of persons, and all persons, including corporations, stand equal before the law and are to be dealt with as equals in a court of justice.

When a corporation is involved, of course, it may act only through natural persons as its agents or employees. In general, an agent or employee of a corporation may bind the corporation by acts and declarations made while acting within the course and scope of his employment.

As stated earlier, it is your duty to determine the facts, and in so doing you must consider only the evidence I have admitted in the case. The term "evidence" includes the sworn testimony of the witnesses, the exhibits admitted in the record, and the stipulated facts.

Remember that any statements, objections, or arguments made by the lawyers are not evidence. The function of the lawyers is to point out those things that are most significant or most helpful to their side of the case, and in so doing, to call your attention to certain facts or inferences that might otherwise escape your notice. Any evidence as to which an objection was sustained by the Court, and any evidence ordered stricken by the Court, must be entirely disregarded. In the final

analysis, it is your own recollection and interpretation of the evidence that controls in the case. What the lawyers say is not binding upon you.

Generally speaking, there are two types of evidence which a jury may consider in properly finding the truth as to the facts of a case.  One is direct evidence -- such as testimony of an eyewitness.  The other is indirect or circumstantial evidence -- the proof of a chain of circumstances which points to the existence or nonexistence of certain facts.  As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that the jury find the facts from a preponderance of all the evidence, both direct and circumstantial.

So, while you should consider only the evidence in the case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in light of common experience.  In other words, you are not limited solely to the bald statements of the witnesses.  You may make deductions and reach conclusions which reason and common sense lead you to draw from the facts which have been established by the testimony and the evidence.

Now, I have said that you must consider all of the evidence.  This does not mean, however, that you must accept all of the evidence as true or accurate.

You are the sole judges of the credibility or "believability" of each witness and the weight to be given to his or her testimony.  In weighing the testimony of a witness, you should consider that witness':  (1) relationship to the plaintiff or to the defendants; (2) interest, if any, in the outcome of the case; (3) manner of testifying; (4) opportunity to observe or acquire knowledge concerning the facts about which he or she testified; (5) candor, fairness, and intelligence; and (6) the extent to which he or she has been supported or contradicted by other credible evidence.  You may, in short, accept or reject the testimony of any witness in whole or in part.

You are not required to accept testimony even though the testimony is uncontradicted and the witness is not impeached. You may decide because of the witness' bearing and demeanor, or because of the inherent improbability of his or her testimony, or for other reasons sufficient to you, that such testimony is not worthy of belief.

A witness may be "impeached" or discredited by contradictory evidence, by a showing that he or she testified falsely concerning a material matter, or by evidence that at some other time he or she said or did something, or failed to say or do something, which is inconsistent with the witness' present testimony. You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness is not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

If you believe that any witness has been so impeached, it is in your exclusive province to give the testimony of that witness such credibility or weight, if any, as you think it deserves.

Also, the weight of the evidence is not necessarily determined by the number of witnesses testifying as to the existence or nonexistence of any fact. You may find that the testimony of a smaller number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

The law allows both the plaintiff and defendant to present testimony at trial by way of reading portions of a witness' deposition. A deposition is prior testimony given by a witness under oath in response to questions from the lawyers in this case. The parties have the right to present any

deposition testimony that they deem necessary.  You are instructed to consider the testimony of the witnesses presented by deposition the same as if the witness had testified live at trial.

The law also permits a lay witness to give his or her testimony in the form of opinions and inferences, if those opinions or inferences are rightfully based on the perception of the witness and helpful to the clear understanding of his or her testimony or the determination of a fact in issue.

A witness who, by training and experience, has become an expert in any art, science, profession or calling, may be permitted to state his or her opinion if the facts or data upon which the expert bases an opinion or inference as perceived by him or her are made known to him or her at or before the hearing.  The witness may give an opinion or inference and reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise.  You should consider such opinions received herein, either expert or from a lay witness, and give such opinions and inferences such weight as you think they deserve.  You may reject such opinions or inferences entirely if you conclude the reasons given in support of the opinion or inference are unsound.

Unless you are otherwise instructed, the burden is on the plaintiff to prove every essential element of her claim by a "preponderance of the evidence."  A preponderance of the evidence means such evidence as, when considered and compared with that opposed to it, has more convincing force and produces in your minds a belief that what is sought to be proved is more likely true than not true.  In other words, to establish a claim by a "preponderance of the evidence" merely means to prove that the claim is more likely so than not so.  This rule does not, of course, require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

In determining whether any fact in issue has been proved by a preponderance of the evidence, you may consider the testimony of all the witnesses, regardless of who may have called

them, and all the exhibits received in evidence, regardless of who may have introduced them.

In answering the questions which I will submit to you, answer "yes" or "no" unless otherwise instructed.  A "yes" answer must be based on a preponderance of the evidence.  If you do not find that a preponderance of the evidence supports a "yes" answer, then answer "no."

If the plaintiff proves her claim by a preponderance of the evidence, you must determine the damages to which the plaintiff is entitled.  You should not interpret the fact that I have given instructions about damages as an indication in any way that I believe that any party should or should not win this case.  It is your task first to decide whether the defendant is liable to plaintiff.  I am instructing you on damages only so that you will have guidance in the event you decide that the defendant is liable and that the plaintiff is entitled to recover money from the defendant.

I have allowed you to take notes during the trial of this case.  There is always a tendency to attach undue importance to matters which one has written down.  Therefore, you are instructed that your notes are only a tool to aid your own individual memory.  You should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.  Above all, your memory should be your greatest asset when it comes time to deliberate and render a decision in this case.

Remember at all times that you are not partisans.  You are judges -- judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

After I have completed reading this Charge to you and have reviewed the verdict form, instructions, and jury questions, counsel will have the opportunity to make their closing arguments.  You will then retire to the jury room to deliberate on your verdict.

Upon retiring to the jury room, you should first select one of the jurors to act as your

presiding officer who will preside over your deliberations and communicate with the Court on your behalf.  A verdict form has been prepared for your convenience.  Your presiding officer will sign in the space provided after you have reached a verdict.

Your verdict must represent a considered judgment of each juror.  In order to return a verdict, it is necessary that all members of the jury agree thereto.  Therefore, you may not enter into an agreement to be bound by a majority or any vote other than a unanimous one.

If, during your deliberations, you wish to communicate with the Court, you should do so only in writing by a note handed to the Deputy Marshal and signed by the presiding officer.  During your deliberations, you will set your own work schedule, deciding for yourselves when and how frequently you wish to recess and for how long.

After you have reached a verdict, you will return this Charge together with your written answers to the questions that I will submit to you.  Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.

## B.

## Title VII Pregnancy Discrimination

Title VII of the Civil Rights Act of 1964 and the Pregnancy Discrimination Act of 1978 prohibit an employer from discriminating against an employee because of pregnancy.  In order to succeed on her claim in this case, plaintiff must prove, by a preponderance of the evidence, that she was demoted because of her pregnancy.  The term "because of" does not connote sole cause. Therefore, plaintiff need not show that her pregnancy was the sole reason defendant demoted her.

If plaintiff proves that she was demoted because of her pregnancy, it then falls on the defendant to prove by a preponderance of the evidence that the same decision would have been made regardless of plaintiff's pregnancy.  If the defendant fails to carry this burden, you must find for the

-7-

plaintiff.

You may not return a verdict in favor of the plaintiff just because you might disagree with defendant's actions or believe them to be harsh or unreasonable.  Under the law, employers are permitted to make their own subjective business judgments, however misguided, mistaken, harsh, or unfair they may appear to some persons, so long as they do not treat an employee adversely because of her pregnancy.  Title VII does not empower courts or juries to second guess the employment decisions of an employer like defendant.  Nor may you substitute your own judgment for that of the defendant.

## C.

### Actual Damages

If you should find in favor of plaintiff on her pregnancy discrimination claim, you must determine an amount of money that is fair compensation for her damages.  You may award damages only for injuries that plaintiff proves were caused by defendant's allegedly wrongful conduct. Conduct by the defendant that does not cause harm does not entitle the plaintiff to damages.  By the same token, harm to the plaintiff that is not the result of wrongful conduct by the defendant does not entitle the plaintiff to damages.  The damages you award must be fair compensation for plaintiff's injuries, no more and no less.

There are two types of actual damages that may be awarded on plaintiff's claim of pregnancy discrimination.  First, plaintiff has requested back pay in the amount of lost wages she has suffered as a result of her demotion from Regional Manager to General Manager and from General Manager to Assistant General Manager.  Second, plaintiff seeks compensatory damages for emotional pain and suffering, shock, discomfort, and mental anguish suffered as a result of her demotions.  In order to recover damages for mental anguish, plaintiff must show more than mere disappointment, anger,

-8-

resentment, or embarrassment.  The term "mental anguish" implies a relatively high degree of pain and mental distress.

If you decide to award actual damages, you should be guided by dispassionate common sense.  Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork.  On the other hand, plaintiff need not prove the amount of her losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.  Any damage award must fairly and reasonably compensate plaintiff for her injuries, must not be punitive, and must be based on the evidence admitted in this case.  Plaintiff must prove her damages by a preponderance of the evidence.

## D.

## <u>Punitive Damages</u>

Plaintiff also requests exemplary, or punitive, damages.  The purpose of punitive damages is to punish the wrongdoer for misconduct and to warn others against doing the same.

The law allows you, but does not require you, to award punitive damages if you find that the defendant, either through the conduct of an employee in a managerial capacity or by ratification of the conduct of any of its employees, acted with malice or reckless indifference towards plaintiff's federally-protected rights.   "Malice" means an intentional wrongdoing--an evil-minded act. "Reckless indifference" means a wanton and willful disregard for the rights of another--in other words, a deliberate act with knowledge of a high degree of probability of harm to another and reckless indifference to the consequences of the act.   In the context of plaintiff's pregnancy discrimination claim, the terms "malice" and "reckless indifference" refer to defendant's knowledge that it may be acting in violation of federal law-- not its awareness that it is engaging in discrimination.  As an alternative to proving that the defendant knew it was acting in violation of

federal law, egregious or outrageous acts may serve as evidence supporting an inference of evil motive.  In either case, a positive element of conscious wrongdoing is required for an award of punitive damages.

In determining whether an employee acts in a "managerial capacity," you must consider what the individual employee is authorized to do by the company and whether that individual employee has discretion as to both what is done and how it is done.  Job titles should be of little importance in making this determination.  Stated differently, a "managerial capacity employee" must be an important employee, but need not be the employer's top management, officers or directors, to be acting in a managerial capacity.

An employer "ratifies" the conduct of an employee if the employer adopts, confirms, or fails to repudiate prior unlawful acts by an employee that were not legally binding on the employer at a time when the employer had the right and knowledge of facts necessary to repudiate such conduct.

## E.

### Stipulations

The parties have stipulated the following facts in this case.  You must consider these facts as proved:

1.       The term "Budget Suites of America," as used in this Charge, means the defendants, Bigelow Management, Inc. and Bigelow Colorado, L.L.C. II.

2.       Laura Taylor became pregnant in January 2003.

3.       Rick Clouse promoted Laura Taylor to the position of Regional Manager on February 2, 2003.

4.       Laura Taylor advised Rick Clouse that she was pregnant on May 23, 2003.

5.       Laura Taylor was demoted from the position of Regional Manager to the position of

-10-

General Manager on or about June 3, 2003.

6.      Laura Taylor was demoted from the position of General Manager to the position of Assistant General Manager on or about July 1, 2003.

7.      Laura Taylor continued working as an Assistant General Manager until she took a leave of absence in September 2003.

8.      Laura Taylor gave birth to her baby in October 2003.

9.      Laura Taylor resigned from Budget Suites of America on December 15, 2003.

**F.**

**Jury Questions**

**1.  June 3, 2003 Demotion**

**Question No. 1:**

Did Budget Suites of America demote Laura Taylor from Regional Manager to General Manager on or about June 3, 2003 because of her pregnancy?

Answer "Yes" or "No."

ANSWER: _____

If you have answered "Yes" to Question No. 1, then answer Question No. 2.  If you have answered "No" to Question No. 1, then proceed to Question No. 5.


**Question No. 2:**

Would Budget Suites of America have made the same decision to demote Laura Taylor from Regional Manager to General Manager had she not been pregnant?

Answer "Yes" or "No."   Budget Suites of America has the burden of proving by a preponderance of the evidence that it would have made the same decision to demote Laura Taylor

had she not been pregnant.

ANSWER: _____

If you have answered "Yes" to Question No. 1 and "No" to Question No. 2, then answer Question Nos. 3 and 4.  If you have answered "Yes" to Question No. 1 and "Yes" to Question No. 2, then proceed to Question No. 5.

**Question No. 3:**

What sum of money, if paid now in cash, would fairly and reasonably compensate Laura Taylor for the damages she has suffered, if any, caused by her demotion from Regional Manager to General Manager on or about June 3, 2003?

Answer in dollars and cents, if any, for each category of damages.

Back Pay                              $ _____

Compensatory damages      $ _____

**Question No. 4:**

Did Budget Suites of America act with malice or reckless indifference in demoting Laura Taylor from Regional Manager to General Manager on or about June 3, 2003?

Answer "Yes" or "No."

ANSWER: _____

## 2.  July 1, 2003 Demotion

**Question No. 5:**

Did Budget Suites of America demote Laura Taylor from General Manager to Assistant General Manager on  or about July 1, 2003 because of her pregnancy?

Answer "Yes" or "No."

ANSWER: _____

If you have answered "Yes" to Question No. 5, then answer Question No. 6.  If you have answered "No" to Question No. 5, then proceed to Question No. 9, if applicable (if you have answered "Yes" to Question No. 4).

**Question No. 6:**

Would Budget Suites of America have made the same decision to demote Laura Taylor from General Manager to Assistant General Manager had she not been pregnant?

Answer "Yes" or "No."   Budget Suites of America has the burden of proving by a preponderance of the evidence that it would have made the same decision to demote Laura Taylor had she not been pregnant.

ANSWER: _____

If you have answered "Yes" to Question No. 5 and "No" to Question No. 6, then answer Question Nos. 7 and 8.  If you have answered "Yes" to Question No. 5 and "Yes" to Question No. 6, then proceed to Question No. 9, if applicable (if you have answered "Yes" to Question No. 4).

**Question No. 7:**

What sum of money, if paid now in cash, would fairly and reasonably compensate Laura Taylor for the damages she has suffered, if any, caused by her demotion from General Manager to Assistant General Manager on or about July 1, 2003?

Answer in dollars and cents, if any, for each category of damages.

| | |
|---|---|
| Back Pay | $ _____ |
| Compensatory damages | $ _____ |

**Question No. 8:**

Did Budget Suites of America act with malice or reckless indifference in demoting Laura Taylor from General Manager to Assistant General Manager on or about July 1, 2003?

-13-

Answer "Yes" or "No."

ANSWER: _____

If you have answered "Yes" to Question No. 8, then answer Question No. 9.

### 3.  <u>Punitive Damages</u>

<u>**Question No. 9:**</u>

What sum of money, if paid now in cash, should be assessed against Budget Suites of America as punitive damages?

Answer in dollars and cents, if any.

$ _____

DATED:  September 29, 2005.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LAURA TAYLOR | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-04-CV-1554-BD |
| | § | |
| BIGELOW MANAGEMENT, | § | |
| INC., ET AL. | § | |
| | § | |
| Defendant. | § | |

## **VERDICT FORM**

We, the jury, have answered the foregoing questions and return the same as our verdict in this case.

DATED:   September ___, 2005.

_____
PRESIDING JUROR

-16-